MORTON STEINBACH, Individually and as Father of STEVEN STEINBACH, an Infant, Appellant, v AETNA CASUALTY AND SURETY CO., et al., Doing Business as UNITED STATES AIRCRAFT INSURANCE GROUP, Respondents.

First Department, June 25, 1981

APPEARANCES OF COUNSEL

*Milton H. Ellerin* for appellant.

*William J. Junkerman* of counsel *(Randal R. Craft, Jr.,* and *John F. Pritchard* with him on the brief; *Haight, Gardner, Poor & Havens* and *William J. Junkerman,* attorneys), for respondents.

SILVERMAN, J.

This is an appeal by plaintiff from a judgment of the Supreme Court dismissing the complaint on defendants' motion for summary judgment.

In this action under section 167 (subd 1, par [b]) of the Insurance Law, plaintiff, an injured party sues defendants, liability insurers, for the amount of an unsatisfied judgment which plaintiff had obtained on stipulation against Buker Airways Inc., the party alleged to have caused the injuries to plaintiff and the insured under liability insurance policy issued by defendants.

Defendants' motion for summary judgment is based upon the insured's, Buker's, failure to comply with certain provisions of the policy, particularly the condition requiring notice of the occurrence: "1. *Notice of Occurrence.* When an occurrence takes place, written notice shall be given by or on behalf of the Insured to the Aviation Managers at the nearest office or branch office whose addresses are listed on the filing back of this policy, as soon as practicable."

In a declaratory judgment action brought by the insurance companies against the insured Buker Airways Inc. and its principal Harold W. Buker, Jr., the Superior Court of New Hampshire "found that the defendants [Buker] did not give notice within a reasonable time, nor as soon as practicable, and that they did not comply with the policy conditions relative to notice"; and that, accordingly, "the policy does not afford coverage relative to the accident of August 1967" (the accident here involved). In the present action, the New York Supreme Court held that by virtue of that judgment the present plaintiff, the injured party, could not bring an action pursuant to section 167 of the Insurance Law against the insurance companies for payment of the judgment that plaintiff had recovered against Buker, notwithstanding the fact that plaintiff was not a party to the New Hampshire action.

The underlying facts are:

Buker's insurers are United States Aircraft Insurance Group (USAIG), a joint underwriting association com-

posed of a group of 27 insurance companies, the defendants in this action. The aviation insurance manager for USAIG is United States Aviation Underwriters, Inc. (USAU), which sets the rates and issues insurance policies. In at least two places the policy is signed by "UNITED STATES AVIATION UNDERWRITERS, INCORPORATED Aviation Managers."

On August 19, 1967, plaintiff, then 16 years old, was attending a summer camp in New Hampshire; the camp had arranged for Buker to drop leaflets over the camp from Buker's airplane. The leaflets apparently were supposed to come down loose, but for some reason, a bundle of them stuck together, came down, and struck plaintiff causing the injuries complained of. Although Buker learned of the accident within hours of its occurrence, Buker did not notify its liability insurance carriers. This appears to have been due in part to a request by an attorney representing plaintiff in New Hampshire not to notify the insurers for the time being. The first notice that the insurers received of the accident was 10½ months later on July 2, 1968 when plaintiff, suing Buker in the Supreme Court, Queens County, attached the insurers' liability under the insurance policy (apparently under the former Seider v Roth [17 NY2d 111] practice).

From a contemporaneous document it is clearly established that plaintiff's representative in New Hampshire was informed as to the identity of the insurance carriers, at least as early as September 19, 1967, but plaintiff gave no notice to the insurance companies until the attachment referred to. The insurers disclaimed liability because of the lateness of notice among other things. The insurers then brought the declaratory judgment action in New Hampshire, resulting in the New Hampshire judgment to which we have referred. As we have said, the injured plaintiff was not a party to that action, apparently because he could not be served in New Hampshire.

The defendants insurers' motion for summary judgment in the New York Supreme Court was based on the insured's —Buker's—failure to comply with the notice provision of the statute. And the New Hampshire judgment was based

on the same failure. Thus, there was not presented either in the New York Supreme Court or in the New Hampshire court the question of whether the injured party, the plaintiff in the present action, gave notice as soon as practicable. If this matter were governed by New York law, defendants' motion for summary judgment would have to be denied because under New York law the failure of the insured to give proper notice does not bar the injured party, at least if the injured party has given notice with as much diligence as is reasonably possible. The reason for this is that in 1939, section 167 (subd 1, par [c]) of the Insurance Law was amended to provide, among other things, that written notice may be given not only by or on behalf of the insured but "by or on behalf of the injured person". "The statute having granted the injured person an independent right to give notice and to recover thereafter, he is not to be charged vicariously with the insured's delay" *(Lauritano v American Fid. Fire Ins. Co.,* 3 AD2d 564, 568, affd 4 NY2d 1028). Thus "an injured third party may seek recovery from an insured's carrier despite the failure of the insured to provide timely notice of the accident" *(General Acc. Ins. Group v Cirucci,* 46 NY2d 862, 863-864).

However, in our view, the rights of the parties under this policy are governed by the law of New Hampshire because that is the State which has the most contacts with the policy under the "grouping of contacts" rule. *(Babcock v Jackson,* 12 NY2d 473.) "This rule requires courts to apply the law of the State which the parties understood would be the principal location of the insured risk and the one most intimately concerned with the outcome of the litigation. (2 Couch, Insurance 2d, [1971 Supp.], § 16:19.5; 12 Appleman, Insurance Law and Practice, [1972 Supp.], § 7079.)" *(Colonial Penn Ins. Co. v Minkoff,* 40 AD2d 819, affd 33 NY2d 542; accord Restatement, Conflict of Laws 2d, § 193; *Lumbermens Mut. Cas. Co. v Stamell Constr. Co.,* 105 NH 28, 31.) Here the location of the insured risk and most of the contacts were indisputably New Hampshire. The policy declaration gives the only address of the insured as Parlin Field, Newport, New Hampshire; states that the aircraft "will usually be based at Parlin Field located at Newport, New Hampshire"; and states the business of the

insured as "fixed base operator". Thus the parties clearly understood that the principal location of the insured risk was New Hampshire. The other contacts are almost all with New Hampshire. The flight was wholly an intra-New Hampshire local flight to drop leaflets over a camp in New Hampshire at the request of the owners of the camp. The accident took place in New Hampshire. The person injured, although a resident of New York, was in fact a summer camper in New Hampshire at the time. The policy was issued through brokers apparently in New Hampshire. The insured, the only other party to the insurance policy, was located in New Hampshire. The only contacts with New York are that USAU, the aviation managers, has an office in New York and the injured plaintiff is a resident of New York.

It appears clear that under New Hampshire law, unlike New York law, failure by the insured to give timely notice in accordance with the terms of the policy bars the claim of the injured third party. Plaintiff so concedes in his brief stating:

"Contrary to New York Insurance Law, Section 167 (1) (c), there is no New Hampshire statute affording an injured person a right, as such, to give prompt notice of an accident to an insurance carrier * * *

"This seems clearly contra the New York Rule whereby a New York injured party has the right to give such notice. (Pensky v. Aetna Life & Casualty Co., supra [84 Misc 2d 270]).

"New Hampshire law likewise holds that any rights of an injured third person against the insurance carrier derive solely through the insurance policy (to which he was not a party) and are thus limited by the jural relationship between the contracting parties to the insurance contract. (Employers Assurance Co. v. Tibbetts, 96 N.H. 296) * * *

"The conclusion is thus inescapable that New Hampshire affords no rights at all to any injured third person, and under the law of that State he would appear bound by the determination in the action between the carrier and the insured whether he was a party or not to that litigation." The New Hampshire cases appear to support this conces-

sion, i.e., the failure of the insured to give timely notice bars the injured party. (See *American Employers Ins. Co. v Sterling*, 101 NH 434; *Lumbermens Mut. Cas. Co. v Stamell Constr. Co.*, 105 NH, at p 33.)

Such indeed was apparently the law in New York also until the statutory amendments of 1939. Even in New York, it is only since those amendments that "the injured party is no longer wholly dependent upon the diligence and conscientiousness of the person who caused him injury." *(Lauritano v American Fid. Fire Ins. Co.*, 3 AD2d, at p 568.) Until then apparently "accident victims could be deprived of all possibilities of recovery through the irresponsibility, obduracy or neglect of the insured" *(supra, p 568)*.

We should perhaps mention some ameliorating provisions of New Hampshire law which, however, do not help plaintiff in this case. Thus, even if the insured does not give notice, if the injured party gives notice within a time that would have been timely for the insured, that notice may apparently satisfy the requirement of notice on behalf of the insured. (Cf. *American Employers Ins. Co. v Sterling*, 101 NH, at pp 436-437.) Further, under the New Hampshire financial responsibility law (Rev Stat Ann, § 268:19), applicable however only to *motor vehicle* policies, an injured party is apparently protected against breaches of conditions by the insured, but even then only up to the statutorily required minimum policy limit. *(American Employers Ins. Co. v Sterling*, 101 NH, at p 438.) But this is not a motor vehicle liability policy nor a motor vehicle accident, so we are remitted to the rule in the absence of special statute, as plaintiff concedes.

The question thus becomes whether it is established that timely notice was not given to the insurers by the insured (or even by the injured party on behalf of the insured), or whether there is a triable issue of fact as to that question.

■ Defendants insurers contend that this issue is precluded by the judgment of the New Hampshire court, a determination on the precise issue made in a case in which the insured was a party but the plaintiff injured party was not. Despite the derivative relationship of plaintiff's claim to Buker and the fact that Buker, like plaintiff, had an interest

in defeating the insurance companies' contention and sustaining the validity and enforceability of the policy, we think the judgment of the New Hampshire court is not collateral estoppel or *res judicata* such as to preclude plaintiff on this issue. Our reason for this is that before the New Hampshire litigation was instituted, the plaintiff had already been injured and was already suing Buker. Thus, privity has not "arisen after the event out of which the estoppel arises" *(Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 486); plaintiff "is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against" the prior party, here Buker *(supra,* p 487).

■ However, defendants' motion has the independent ground that the insured failed to give timely notice, and the record establishes that fact quite independently of the New Hampshire judgment. The insured Buker clearly knew within hours that the leaflets had struck a camper; surely by September 19, 1967 when plaintiff's correspondent attorney in New Hampshire called him about the matter, the insured Buker knew that a claim was at least in contemplation, and plaintiff's correspondent attorney knew the name of the insurers at that date. Yet no notice was given by the insured or anyone else until July 2, 1968.

Plaintiff argues that in fact the insurers were notified because the camp notified its liability insurer, St. Paul Fire & Marine Insurance Co., one of the 27 members of the USAIG. But we agree with the New Hampshire court that this was not notice to Buker's insurers. To begin with, the policy requires notice "to the Aviation Managers", clearly identified in the policy as USAU. And further, such notice to St. Paul did not serve the purpose of the notice requirement of Buker's policy. The purpose of such a notice requirement is "to protect the insurer's rights by affording it an opportunity to conduct timely investigation which promotes early settlement and prevents fraudulent claims." *(Lumbermens Mut. Cas. Co. v Oliver,* 115 NH 141, 143.) Surely St. Paul, notified by the camp of an accident, could hardly be expected to check to determine whether Buker, the airplane operator, was insured by a group of 27 insurance companies of which St. Paul was one (and not even the

one to whom this policy was assigned). Thus St. Paul investigated the accident solely to determine whether its insured, the camp, might be liable. Nobody investigated to determine whether Buker, the insured under USAIG's policy was liable or whether the settlement should be made on Buker's behalf. To the extent that prejudice to the insurer is a factor in determining whether the delay in notice to the insurer bars recovery, "[a] delay that frustrates the purpose of the notice provision to afford adequate opportunity for investigation is prejudicial." *(Lumbermens Mut. Cas. Co. v Oliver, supra,* p 144.) (The New Hampshire court's decision indicates that no statement was obtained by St. Paul from Mr. Buker or anyone on behalf of Buker but only from the owner of the camp and one other person.) The New Hampshire court concluded, and we agree, that "this was not a satisfactory investigation in so far as the interests of USAIG are concerned."

The New Hampshire Supreme Court has said: "Whether the notice provisions of the policy have been complied with is a factual question for the trial court * * * The determination depends on the prejudice to the insurer precipitated by the delay as well as on the length of and reasons for the delay." *(Lumbermens Mut. Cas. Co. v Oliver, supra,* p 144.)

However, the decision of the New Hampshire Supreme Court in *American Employers Ins. Co. v Sterling* (101 NH 434, *supra),* appears to us decisive in the present case. In the *American Employers* case, the delay between the accident and notice to the insurance company was 58 days. The trial court found that notice of the accident was given as soon as practicable and that therefore, the insurance carrier was required to provide coverage. The Supreme Court stated that the delay in giving notice was not reasonably excusable, and therefore reversed the trial court and granted judgment as a matter of law in favor of the insurance company, declaring that the company was not obligated to indemnify the insured (beyond the minimum statutory limit required by the financial responsibility law). The court said:

"Whether the requirement has been satisfied is ordinarily

a question of fact, and extenuating circumstances may be considered in determining whether delay in giving notice was reasonably excusable * * *

"The facts being undisputed and no justification for delay appearing, the question of whether there was compliance with the terms of the policy was one of law * * * No evidence supported the finding made below that notice was given as soon as practicable, and the undisputed facts require a contrary holding." *(American Employers Ins. Co. v Sterling,* 101 NH, at p 437.)

In the circumstances in the present case, there having been a delay of 10½ months in notifying the insurance carriers and no reasonable justification therefor, the insurance carriers must be held as a matter of law to be relieved from liability.

Accordingly, plaintiff is barred by the breach of the notice condition of the policy from collecting the amount of his judgment against Buker from Buker's insurers.

The judgment and order (two papers), of the Supreme Court, New York County (WOLIN, J.), entered respectively May 2 and April 25, 1980 dismissing the complaint on defendants' motion for summary judgment, should be affirmed, without costs.

BIRNS, J. P., CARRO, BLOOM and FEIN, JJ., concur.

Order and judgment, Supreme Court, New York County, entered on April 25, 1980 and May 2, 1980, respectively, unanimously affirmed, without costs and without disbursements.